

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,153

### EX PARTE ANTRONE LYNELL JOHNSON, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. F-94-51874-J IN THE CRIMINAL DISTRICT COURT NO. 3
### FROM DALLAS COUNTY

**COCHRAN, J., filed a concurring opinion.**

### OPINION

I join the Court's opinion. I write separately because many prosecutors, acting in all

good faith, may not realize that, under *Brady*,[1] a prosecutor must always disclose information

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (due process requires prosecutors to "avoid" an unfair trial by making available to the defense evidence "favorable to an accused" if that evidence "is material either to guilt or to punishment"); *see also Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (exculpatory evidence is evidence the suppression of which would "undermine confidence in the verdict"); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (exculpatory evidence includes evidence "affecting" witness credibility when that witness's "reliability" is likely "determinative of guilt or innocence").

that the complaining witness has recanted her allegations of sexual molestation (or any criminal act) even when the defendant pleads guilty or has already agreed to plead guilty.

In this case, applicant was charged with aggravated sexual assault of a child. The prosecutor interviewed the complainant the day before the scheduled trial. At that time, she told the prosecutor that there had been no sexual contact. The written notes in the prosecutor's file state:

> Met with C/W–her grandmother brought her in[.] CW says [Defendant] Johnson did not make her give him oral sex–he took her into bathroom & she told him she didn't want to do it so he stayed in there & pretended & then let her out.

The written notes also state that a D.A. investigator interviewed officials at the complainant's school five days before the trial. Those notes indicate that the complaining witness was "a great liar":

> Ms. Harrison [the principal's assistant] stated that [complainant] is a great liar. She stated she is Mr. Nance['s] Asst. & he would be able to tell a lot[]. Spoke with Mr. Nance he stated she is a great liar & if you really didn't know her you would think that she is telling the truth. He stated he knew bits & pieces about this case. I ask him if he believed her. He said yes but she just got into something over her head.

On the day of trial the complainant did not come to court. The Agreed Findings of Fact signed by the habeas court state that the prosecution never informed applicant's trial counsel of these "exculpatory, mitigating, and impeaching facts."

Applicant, without knowing of the complainant's recantation, of her failure to appear for trial, and of her school officials' opinions that she is "a great liar," agreed to plead guilty

and was placed on ten years' deferred adjudication.  He was later adjudicated and sentenced to life in prison.[2]

The State has an affirmative duty to disclose all material exculpatory evidence to the defense under *Brady*.  We have previously held that this duty to disclose favorable information extends to defendants who plead guilty as well as to those who actually go to trial.[3]  However, in *United States v. Ruiz*,[4] the United States Supreme Court held that neither

---

[2] The trial court's Agreed Findings of Fact state that, once again, the State was aware that the second complainant "repeatedly denied having engaged in any sexual activity on the very day that Applicant supposedly committed the offence relied upon by the trial court to adjudicate Applicant's guilt relative to the initial charge of aggravated sexual assault."  Once again, the prosecutor did not inform applicant or his attorney of this exculpatory information.

[3] *Ex parte Lewis*, 587 S.W.2d 697, 701 (Tex. Crim. App. 1979) ("we hold that the prosecutor's duty to disclose favorable information (whether relating to the issue of competence, guilt, or punishment) extends to defendants who plead guilty as well as to those who plead not guilty."); *see also Tate v. Wood*, 963 F.2d 20, 24 (2nd Cir. 1992) ("The test of materiality [of *Brady* material] in the context of a plea is whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial. The inquiry is an objective one that is resolved largely on the basis of the persuasiveness of the withheld evidence.").

[4] 536 U.S. 622, 630 (2002) (stressing the *Brady* right to impeachment evidence relates to the fairness of a trial; recognizing that a defendant may waive various constitutional rights–including the right to a fair trial–in the context of a guilty plea "despite various forms of misapprehension under which [he] might labor"; noting the likely detriment to the plea-bargaining process and the efficient administration of justice if prosecutors were required to disclose material impeachment evidence, noting that "the added value ... of the [preplea disclosure of material impeachment evidence] is often limited, for it depends upon the defendant's independent awareness of the details of the Government's case."); *see also Gruning v. DiPaolo*, 311 F.3d 69, 73 (1st Cir. 2002) (recognizing that *Ruiz* held that the government is not constitutionally required to disclose material impeachment evidence prior to entering into a plea bargain); *United States v. Cottage*, 307 F.3d 494, 499-500 & n.5 (6th Cir. 2002) (recognizing that the Court in *Ruiz* held that "a defendant has no constitutional right to the disclosure of impeachment information before entering a plea agreement"); *United States v. Dyess*, 293 F.Supp. 2d 675, 688 (S.D.W. Va.2003) (recognizing that the *Ruiz* decision forecloses any argument that a defendant is entitled to impeachment information under *Brady* and *Giglio* before

*Brady* nor the federal constitution require prosecutors to disclose impeachment information prior to entering into a plea agreement with a defendant. *Ruiz*, by its terms, applies only to material *impeachment* evidence, and the Supreme Court emphasized that the government there had agreed to "provide 'any information establishing the factual innocence of the defendant' regardless."[5] To establish a *Brady* claim in post-conviction proceedings, an applicant must demonstrate that (1) the prosecution actively suppressed or failed to divulge evidence; (2) that evidence was exculpatory, mitigating, or of impeachment value; and (3) the evidence was material.[6] Evidence is material only if there is a reasonable probability that,

---

entering a plea); *People v. Moore*, 804 N.E.2d 595, 598-600 (Ill. Ct. App. 2003) (prosecutor did not violate defendant's due-process rights when refusing to negotiate a plea bargain after the defendant requested the identity of a confidential informant because *Ruiz* established that defendants do not have a right to material impeachment information prior to entering into a plea agreement); *In re Brennan*, 72 P.3d 182, 186 (Wash. Ct. App. 2003) (rejecting claim that plea was invalid because prosecutor failed to disclose evidence that could be used to impeach government witness at trial in light of the *Ruiz* decision that "rejected the Ninth Circuit's conclusion that the constitution requires prosecutors to make certain impeachment information available to defendants before pleading guilty").

[5] *Ruiz*, 536 U.S. at 631. *See McCann v. Mangialard,* 337 F.3d 782, 787-88 (7th Cir. 2003) (stating that *Ruiz* "strongly suggests" that "the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea."); *Medel v. State*, 184 P.3d 1226, 1234 (Utah 2008) (noting that *Ruiz* was confined to impeachment evidence and stating that "if there is any evidence suggesting factual innocence–even if it is impeachment evidence–the prosecution will always have a constitutional obligation to disclose that evidence to the defendant before plea bargaining begins. While making the prosecution's job more difficult, this obligation reflects 'the special role played by the American prosecutor in the search for truth in criminal trials.'").

[6] *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *Ex parte Kimes*, 872 S.W.2d 701, 701 n.2 (Tex. Crim. App. 1993) (noting that claims of *Brady* violations are "cognizable in a post-conviction application for writ of habeas corpus").

had the evidence been disclosed to the defense, the result would have been different.[7]

In the context of a post-*Ruiz* guilty plea,[8] the applicant for habeas corpus relief must show that the evidence is actually exculpatory (not merely mitigating or of impeaching value) because such evidence tends to support a claim of factual innocence.[9]  And the applicant must also show, by a preponderance of the evidence, that, had this material exculpatory evidence been divulged, he would not have entered a plea, but would have gone to trial because of the objective likelihood of being found not guilty.[10]

Under *Brady*, all victim recantations are exculpatory and tend to show a defendant's lack of criminal culpability.  Indeed, any assertion by a material witness that contradicts or casts serious doubt upon the existence of an essential element of the offense is core *Brady* exculpatory evidence that must be divulged to the defense regardless of whether the defendant intends to plead guilty.  Before trial, no one knows with certainty whether this witness will testify to that exculpatory fact or testify to an inculpatory fact for which the contrary assertion is impeachment material.  Thus, despite *Ruiz*, the experienced prosecutor

---

[7] *Ex parte Adams*, 768 S.W.2d 281, 291 (Tex. Crim. App. 1989).

[8] Because Texas courts follow the federal interpretation of the constitutional right to exculpatory evidence under *Brady*, and because Texas statutes do not provide additional discovery rights in this context, we should follow the United States Supreme Court in *Brady* matters, including its own limitations as expressed in *Ruiz*.

[9] *See Ruiz*, 536 U.S. at 631; *McCann*, 337 F.3d at 787-88; *Medel*, 184 P.3d at 1234.

[10] *See Tate*, 963 F.2d 24; *Miller v. Angliker*, 848 F.2d 1312, 1322 (2d Cir. 1988); *United States v. Hammer*, 404 F. Supp. 2d 676, 795-96; *Taylor v. State*, 848 So.2d 410, 412 (Fla. Dist. Ct. App. 2003); *Roeder v. State*, 162 P.3d 794, 797-98 (Idaho Ct. App. 2007).

will divulge all known facts and evidence that could be viewed as exculpatory material, even when, for example, a recantation has been recanted.

In this case, the State concedes that the complainant made a recantation the day before trial. The parties agree that applicant's counsel was never made aware of this fact. Testimony from the complainant that the offense never occurred and that applicant did not molest her would be strong evidence of his factual innocence.[11] Even if the complainant had appeared for trial and testified that applicant molested her, evidence that she had, just the day before trial, told the prosecutor that he had not done so would be powerful exculpatory evidence as well as impeachment evidence of her credibility. Trial counsel stated that, had he been aware of the recantation, he never would have "pleaded [applicant] guilty" because, armed with this recantation evidence, he believed that he could have "won" the case. The State does not disagree with any of these facts.[12] The trial judge recommends that applicant be granted relief on his *Brady* claim, and the record supports the trial judge's factual findings as well as his recommendation to grant relief.

---

[11] There is no suggestion in this record of any other inculpatory testimonial or physical evidence.

[12] After the habeas record was submitted to this Court, the original prosecutor submitted an affidavit to the habeas judge setting out her "usual and customary" practice concerning her understanding and fulfillment of *Brady* duties, as well as her belief that she followed that customary practice in this case. The habeas judge found that "the recent information presented to the Court does not change the outcome of the Court's prior findings of fact and conclusions of law." The issue is not necessarily one of "good" or "bad" faith, or of one's customary practices. The issue is ensuring (and documenting) that all potential *Brady* material has been timely divulged. The experienced prosecutor and defense attorney will document, in their files, the production of all discovery materials, especially potential *Brady* material.

Filed: May 20, 2009

Do not Publish