2015 UT App 136

# THE UTAH COURT OF APPEALS

TODD E. MONSON,
Petitioner and Appellant,
*v.*
SALT LAKE CITY,
Respondent and Appellee.

Opinion
No. 20130778-CA
Filed May 29, 2015

Third District Court, Salt Lake Department
The Honorable Paul G. Maughan
No. 120908738

Michael P. Studebaker, Attorney for Appellant

Padma Veeru-Collings, Steven L. Newton, and
Brandon E. Simmons Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES JAMES Z. DAVIS and STEPHEN L. ROTH concurred.

CHRISTIANSEN, Judge:

¶1     Todd E. Monson appeals from the district court's dismissal
of his petition for postconviction relief. Monson argues that Salt
Lake City withheld material exculpatory evidence related to
alleged professional misconduct by the Utah Highway Patrol
trooper who arrested him for driving under the influence of
alcohol. Monson claims that this evidence constitutes newly
discovered evidence that entitles him to relief under the Post-
Conviction Remedies Act. We conclude that the evidence Monson
identifies is merely impeachment evidence that the City had no
constitutional obligation to disclose to Monson before he pled
guilty. Monson has therefore failed to demonstrate his entitlement

to any postconviction relief provided for by the Post-Conviction Remedies Act, and we affirm the district court's dismissal of his petition.


BACKGROUND

¶2     Monson was arrested by former Utah Highway Patrol Trooper Lisa Steed in 2009 for driving under the influence of alcohol. In late 2010, he pled guilty in justice court to a reduced charge of impaired driving. Monson initially appealed his case to the district court but then voluntarily withdrew that appeal.

¶3     In 2012, internal Utah Highway Patrol correspondence was made public regarding disciplinary actions taken against Steed in 2010 for violating various departmental policies. Also made public was a letter reporting the results of an internal investigation. That investigation revealed discrepancies between Steed's written reports in DUI cases and both the investigator's observations and laboratory testing of samples taken from suspects. Monson filed the present petition for postconviction relief, arguing that this evidence was newly discovered and entitled him to relief under the Post-Conviction Remedies Act (the PCRA).

¶4     The district court dismissed Monson's petition, concluding that the petition was procedurally barred and that it failed to demonstrate Monson's entitlement to relief. The district court first determined that Monson's claim was procedurally barred because he could have challenged Steed's actions related to the DUI stop at trial if he had not pled guilty. The court nevertheless reached the merits of Monson's arguments, concluding that the evidence Monson relied on was merely impeachment evidence, that the City had no obligation to produce it before Monson pled guilty, and that Monson's plea was therefore not unknowing or involuntary. The district court also determined that because the evidence was impeachment evidence rather than truly exculpatory, Monson had

failed to demonstrate that no reasonable trier of fact could have found him guilty in light of this evidence.

## ISSUE AND STANDARD OF REVIEW

¶5 Monson argues that the district court erroneously dismissed his petition for postconviction relief. We review for correctness the district court's dismissal of a petition for postconviction relief. *Medel v. State*, 2008 UT 32, ¶ 16, 184 P.3d 1226.

## ANALYSIS

### I. Monson Has Not Demonstrated that His Plea Was Involuntary or Unknowing.

¶6 Monson first argues that he is entitled to postconviction relief because the City failed to disclose both the internal-investigation report and the evidence that Steed had been disciplined for violation of departmental policies. A defendant may seek relief from a conviction under the PCRA if "the conviction was obtained . . . in violation of the United States Constitution or Utah Constitution." Utah Code Ann. § 78B-9-104(1)(a) (LexisNexis 2012). However, a defendant who pleads guilty "waives all non-jurisdictional challenges to [a] conviction," including pre-plea constitutional violations. *Medel v. State*, 2008 UT 32, ¶ 26, 184 P.3d 1226 (alteration in original) (citation and internal quotation marks omitted). Thus, once a defendant has pled guilty, the "only avenue for challenging his conviction is to claim that he did not voluntarily or intelligently enter his plea." *Id.* (citation and internal quotation marks omitted).

¶7 Generally, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S.

83, 87 (1963). "Impeachment evidence, . . . as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). But "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant" for that plea to be valid. *See United States v. Ruiz*, 536 U.S. 622, 633 (2002). Rather, "for a guilty plea to be rendered involuntary based on the prosecutor's failure to disclose evidence, a petitioner must establish that the evidence withheld by the prosecution was material exculpatory evidence." *Medel*, 2008 UT 32, ¶ 33. If "the undisclosed evidence was . . . impeachment evidence that neither suggests factual innocence nor shakes our confidence in the outcome of the proceedings," the prosecution's failure to disclose that evidence will not render a defendant's plea involuntary or unknowing. *See id.* ¶ 27.

¶8      In *Medel v. State*, the Utah Supreme Court considered a defendant's postconviction petition alleging that the State withheld both impeachment evidence and the results of a psychological examination that the defendant argued would have supported a diminished-capacity defense at trial. 2008 UT 32, ¶¶ 8–9, 11, 12, 184 P.3d 1226. Medel claimed that if the State had disclosed this evidence to him, he would not have pled guilty and would have instead gone to trial. *Id.* ¶¶ 11, 13. The district court denied the petition, and our supreme court affirmed. *Id.* ¶ 2. The supreme court first concluded that because he had pled guilty, Medel could argue only that the State's nondisclosure rendered his plea involuntary. *Id.* ¶ 27. The court then considered the undisclosed evidence and determined that the evidence "[did] not suggest factual innocence" and was thus not exculpatory. *Id.* ¶¶ 41, 44, 48. The court therefore determined that the State had no obligation to disclose the impeachment and affirmative-defense evidence before accepting Medel's guilty plea and thus the State's nondisclosure did not render Medel's guilty plea involuntary or unknowing. *Id.* ¶ 27.

¶9     This case is essentially indistinguishable from *Medel*. Here, the City's nondisclosure consists of two categories of evidence: first, internal disciplinary reports discussing Steed's failure to follow departmental policy by (1) performing nonconsensual blood draws without assistance at the site of traffic stops; (2) leaving her vehicle without notifying dispatch of a traffic stop; (3) performing alcohol breath tests before performing field sobriety tests; and (4) removing her external microphone during a stop and, second, a report and other evidence suggesting that Steed may have falsified or misstated information in other DUI cases.

¶10     With respect to the first category of evidence, Steed's failure to follow departmental policy regarding the methods by which officers should conduct traffic and DUI stops simply has no bearing on Monson's guilt or innocence. Rather, Steed's noncompliance with departmental policy would have, at best, affected her credibility before a jury, and it would therefore have served merely as impeachment evidence.

¶11     The second category of evidence consists principally of a report detailing the results of an internal investigation of Steed's police reports. That investigation revealed inconsistencies between Steed's police reports and the subsequent toxicology reports on eleven out of a sample of twenty of her DUI arrest reports. The investigator also reported discrepancies between Steed's report and the investigator's observations for a particular stop where the investigator had assisted with a blood draw and personally inspected the suspect for signs of intoxication. This evidence could certainly have affected Steed's credibility in front of a jury in Monson's case. However, as the district court observed, Monson has identified no evidence suggesting that Steed acted improperly or falsified any information with respect to his particular case. Evidence that she may have done so in other cases does not prove that she did so here, particularly in light of the fact that Monson has never alleged any such improprieties or asserted his own innocence. Accordingly, the evidence the City withheld was merely impeachment evidence, not exculpatory evidence that "suggests

factual innocence []or shakes our confidence in the outcome of the proceedings." *Medel*, 2008 UT 32, ¶ 27.

¶12 Monson argues that *Medel* is inapposite because "there is no indication in *Medel* that the government [took] the active role in withholding this material as has been clearly demonstrated in the present matter." However, *Brady v. Maryland* makes clear that the prosecution's disclosure or nondisclosure of information is to be evaluated "irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). It is therefore unclear how Monson believes the alleged "active" withholding of evidence in this case should alter the analysis under *Brady* and its progeny, and Monson makes no attempt to explain the effect of this claim. We are therefore not persuaded that *Medel* is inapplicable here.

¶13 In addition, Monson argues that *Tillman v. State* requires reversal of the district court's ruling. 2005 UT 56, 128 P.3d 1123. In *Tillman*, our supreme court concluded that the prosecution had violated its *Brady* obligations by failing to disclose transcripts suggesting that a State witness had been coached. *Id.* ¶ 92. The supreme court determined that the transcripts "contain significant evidence that damages the credibility of the prosecution's star witness and undermines critical aspects of the prosecution's theory." *Id.* The court concluded that the State's failure to disclose this impeachment evidence undermined confidence in the defendant's sentence. *Id.* Accordingly, the supreme court affirmed the district court's decision to vacate the defendant's death sentence and order a new sentencing hearing. *Id.*

¶14 *Tillman* is of no help to Monson, however, because the supreme court's ruling in *Tillman* was based on the prosecution's failure to disclose the impeachment evidence *at trial* as required by *Brady*. Because Monson pled guilty here, his right to disclosure of favorable impeachment evidence at trial was never triggered. And the City had no obligation to disclose impeachment evidence during the plea-bargaining process. *See United States v. Ruiz*, 536

U.S. 622, 629 (2002); *Medel v. State*, 2008 UT 32, ¶ 28, 184 P.3d 1226. Thus, *Tillman* does not alter our conclusion that the City's nondisclosure of impeachment evidence does not affect whether Monson's plea was knowing and voluntary. We therefore affirm the district court's ruling on this claim.

## II. Monson Is Not Entitled to Postconviction Relief on the Basis of Newly Discovered Impeachment Evidence.

¶15    Monson also argues that evidence of Steed's misconduct is newly discovered evidence that requires the court to vacate his conviction. A defendant may seek relief from a conviction under the PCRA if "newly discovered material evidence exists that requires the court to vacate the conviction or sentence." Utah Code Ann. § 78B-9-104(1)(e) (LexisNexis 2012). However, to qualify for relief, the newly discovered evidence may not be "merely impeachment evidence." *Id.* § 78B-9-104(1)(e)(iii). Because we have determined that the evidence Monson relies on to seek postconviction relief is merely impeachment evidence, he is not entitled to relief from his conviction on this basis. We therefore affirm the district court's ruling on this claim.

## III. We Do Not Reach Monson's Remaining Claims.

¶16    Because we affirm the trial court's dismissal of Monson's petition on its merits, we need not consider Monson's arguments that the district court erroneously concluded that his petition was procedurally barred under the PCRA. In addition, due to our determination that Monson was ineligible for relief because the evidence he relies on is merely impeachment evidence, we need not review the district court's ruling that Monson failed to demonstrate that a reasonable jury could not have found him guilty if the City had disclosed the evidence to Monson. We also need not address Monson's related argument that the district court improperly considered his failure to allege his factual innocence in evaluating whether he had met that burden.

CONCLUSION

¶17 The evidence of Steed's disciplinary issues and alleged misconduct does not bear on Monson's guilt in this case and would have served only to impeach Steed's credibility if Monson had elected to go to trial. The City was therefore not obligated to disclose this impeachment evidence to Monson before accepting his guilty plea, and Monson cannot rely on the City's nondisclosure to demonstrate that his plea was involuntary or unknowing. Moreover, the impeachment evidence does not provide an independent basis for postconviction relief under the PCRA. We therefore affirm the district court's dismissal of Monson's petition for postconviction relief.

––––––––––