2012 UT 5

**Von Lester TAYLOR, Petitioner and Appellant,**

v.

**STATE of Utah, Defendant and Appellee.**

**No. 20090771.**

Supreme Court of Utah.

Jan. 24, 2012.

Brian M. Pomerantz, Los Angeles, CA, Megan Blythe Moriarty, Salt Lake City, for appellant.

Mark L. Shurtleff, Att'y Gen., Thomas Brunker, Erin Riley, Asst. Att'ys Gen., Salt Lake City, for appellee.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 In this appeal we decide whether the district court correctly granted the State's motion to dismiss Von Lester Taylor's second petition for post-conviction relief. The district court held that all of Taylor's claims[1] were procedurally barred under the Post–Conviction Remedies Act (PCRA) because they were raised, or could have been, but were not, raised in a prior proceeding. Because Taylor has failed to establish that his claims could not have been raised in a prior proceeding and has failed to meet any statutory or common law exceptions to the procedural bar, we affirm.

## BACKGROUND

¶ 2 In December 1990, Taylor and Edward Deli (Deli) broke into the Tiede family cabin while the Tiedes were away for the night. The next day, Kay Tiede returned to the cabin with her daughter, Linae, and her mother, Beth Potts. Upon entering the cabin, Taylor ordered Kay and Beth upstairs. They were then shot to death. A short time after the shootings, Kay's husband, Rolf, and the couple's other daughter, Ticia, returned to the cabin. Taylor ordered them to the garage where Taylor demanded money and then shot Rolf. Before leaving the cabin, Taylor shot Rolf in the head a second time

---

1. Taylor's second petition for post-conviction relief included thirty claims for relief. Taylor raises claims 5, 9–10, 12, 14, 19, 21, 24, 25, 27, and 29–30 on appeal. Taylor conceded in the district court that claims 1–4, 6–8, 11, 13, 15–18, 20, 22–23, 26, and 28–30 were raised and addressed in a prior proceeding and are procedurally barred.

Although Taylor conceded at the district court that claims 29 and 30 were raised in a prior proceeding, he again raises these claims on appeal, arguing that they have "necessarily changed since their first presentation to this Court."

and doused him with gasoline. Next, he spread gasoline throughout the cabin and set it on fire. Taylor and Deli then took Linae and Ticia with them and left the cabin. Rolf survived and alerted the police. Taylor and Deli took Linae and Ticia hostage, stole Rolf's car, and led police on a high-speed chase before they were caught and arrested.

¶ 3 Taylor pled guilty to two capital homicide charges for the murders of Kay Tiede and Beth Potts. The State then agreed to drop all additional charges, including attempted criminal homicide, aggravated arson, aggravated kidnaping, aggravated robbery, theft, and failure to respond to an officer's signal.[2] The penalty phase of the trial was conducted in May 1991, and the jury unanimously voted to sentence Taylor to death. Following the penalty phase, Taylor filed a motion with the trial court to withdraw his guilty plea. That motion was denied.

¶ 4 In October 1991, Taylor's trial counsel filed a notice of appeal. The State moved to dismiss Taylor's counsel and strike his opening brief. Counsel was ordered to withdraw, but his brief was not stricken. In September 1993, new counsel was appointed to represent Taylor. He filed a motion under rule 23B of the Utah Rules of Appellate Procedure asking us to remand the case to the district court for an evidentiary hearing on the issue of whether trial counsel had been ineffective. We granted the motion. The rule 23B hearing was held before the district court in May 1995. The district court rejected all of Taylor's claims of ineffective assistance of trial counsel, and we affirmed. *See State v. Taylor (Taylor I )*, 947 P.2d 681, 690 (Utah 1997). The United States Supreme Court subsequently denied Taylor's petition for a writ of certiorari. *Taylor v. Utah*, 525 U.S. 833, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998).

¶ 5 In February 1998, the district court appointed post-conviction counsel to represent Taylor in proceedings under the PCRA. Counsel filed a petition for post-conviction relief in February 1999 and amended the petition in May 2002. The State responded to the amended petition by filing a motion for summary judgment. The court granted the State's motion for summary judgment. It held that (1) all claims for ineffective assistance of trial counsel were procedurally barred because they were raised, or could have been raised, during the rule 23B hearing, and (2) all claims for ineffective assistance of appellate counsel failed because Taylor had not established that appellate counsel missed an obvious claim that might have resulted in a reversal on appeal. *See Taylor II*, 2007 UT 12, ¶ 11, 156 P.3d 739. We affirmed the district court's grant of summary judgment, holding that appellate counsel did not provide ineffective assistance because he did not overlook any claims that could have resulted in a different outcome on appeal. *Id.* ¶ 127.

¶ 6 In September 2007, Taylor filed a petition for writ of habeas corpus in federal court. He amended the petition in November 2007. That case has been stayed pending conclusion of the present case.

¶ 7 Taylor filed this successive petition for post-conviction relief in the district court on November 5, 2007. The parties then filed several motions, responses, and supplemental memoranda with the district court. In particular, the State filed a February 15, 2008 motion to dismiss Taylor's petition. On August 17, 2009, the district court granted the State's motion. Taylor timely appealed to this court.

## STANDARD OF REVIEW

¶ 8 " 'We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law.' " *Taylor II*, 2007 UT 12, ¶ 13, 156 P.3d 739 (internal quotation marks omitted).

## ANALYSIS

¶ 9 Taylor's second petition for post-conviction relief asserted thirty claims. The dis-

---

**2.** Although the State dropped these charges, during the penalty phase the jury "unanimously found that the State had proven, beyond a reasonable doubt, that Taylor had committed the[se] aggravating crimes" with an additional finding of possession of a firearm by a person on parole. *Taylor v. State (Taylor II )*, 2007 UT 12, ¶ 4, 156 P.3d 739.

trict court ruled that the PCRA procedurally barred all of Taylor's claims because they could have been raised in a prior proceeding. Additionally, the district court held that Taylor had not established "that any of the statutory or common law exceptions [to the procedural bar] appl[ied] that would permit the court to consider the merits of Taylor's claim." On appeal, Taylor challenges the district court's dismissal of twelve of his original thirty claims. These claims include the following: (1) the trial court erred in dismissing Taylor's motion for change of venue, (2) the trial court erred in failing to strike potential jurors for cause, (3) the trial court erred in failing to ask certain voir dire questions, (4) the trial court erred by allowing the introduction of the doctrine of blood atonement during voir dire, (5) the prosecutor engaged in misconduct when he allegedly excluded potential jurors based on religious affiliation, (6) the jurors impermissibly considered extrinsic evidence, (7) the trial court erred by admitting inadmissible evidence during the penalty phase, (8) the State failed to disclose exculpatory evidence, (9) Taylor's death sentence was disproportionate to his culpability, (10) the appellate record is inadequate, (11) post-conviction counsel was ineffective, and (12) the cumulative impact of these errors prejudiced the outcome of Taylor's sentencing hearing.

¶ 10 Taylor contends that these claims could not have been raised in an earlier proceeding because they "present new facts that were not previously known." Additionally, he claims that, even if these claims are procedurally barred, we should consider them under the common law exceptions to the procedural bar and under the statutory

exception for ineffective assistance of counsel.

¶ 11 We first examine Taylor's claims under the PCRA and hold that all of them are procedurally barred because (1) they were either raised and addressed, or could have been raised, in his first petition for post-conviction relief, and (2) they fail to meet the PCRA's exceptions to the procedural bar. We next examine the common law exceptions [3] to the procedural bar and the statutory exception for ineffective assistance of counsel and hold that none of these exceptions apply.

## I. TAYLOR'S CLAIMS ARE PROCEDURALLY BARRED BECAUSE THEY COULD HAVE BEEN RAISED IN HIS FIRST PETITION FOR POST–CONVICTION RELIEF AND THEY DO NOT SATISFY ANY OF THE PCRA'S PROCEDURAL EXCEPTIONS

¶ 12 Taylor argues that the district court erred in holding that twelve of his post-conviction claims could have been raised in a previous proceeding.[4] Specifically, Taylor argues that the evidence supporting these claims was not discovered until after he filed his first petition for post-conviction relief and therefore he could not have raised these claims in that petition. We are unpersuaded.

¶ 13 The PCRA precludes relief "upon any ground that . . . was raised or addressed . . . or could have been, but was not, raised in a previous request for post-conviction relief." UTAH CODE § 78–35a–106(1)(d) (2007).[5] But the PCRA contains exceptions to the procedural bar that allow a petitioner to seek relief from a conviction or sentence even though

---

3. The PCRA was amended in 2008 to "extinguish" the common law exceptions found in *Hurst v. Cook*, 777 P.2d 1029, 1037 (Utah 1989). *See Gardner v. State* (*Gardner II*), 2010 UT 46, ¶ 91, 234 P.3d 1115. The amendment established the PCRA as the "sole legal remedy" for petitioners seeking relief from a conviction or sentence. *Gardner II*, 2010 UT 46, ¶¶ 35, 91, 234 P.3d 1115. But the common law exceptions to the procedural bar are still applicable in this case because Taylor filed his petition prior to the enactment of the 2008 amendments and the State has not argued that this provision should be applied retroactively.

4. Taylor argues that the State should be estopped from asserting the procedural bar in this case because of its involvement in drafting the PCRA. We find this assertion to be frivolous.

5. Taylor filed this petition in 2007. The legislature amended and renumbered the PCRA in 2008 and 2010. For clarity, we cite to the 2007 version of the Utah Code, which was the version in effect when Taylor filed his petition.

the specific grounds for relief could have been raised in a prior proceeding. *See id.* § 78–35a–104. These exceptions include cases of newly discovered material evidence. *Id.* § 78–35a–104(1)(e); *see also Gardner v. Galetka (Gardner I)*, 2004 UT 42, ¶ 14, 94 P.3d 263. Taylor contends that this exception applies here.[6]

¶ 14 The newly discovered evidence exception provides that "a person who has been convicted and sentenced for a criminal offense may file an action in the district court ... for post-conviction relief to vacate or modify the conviction or sentence [if] ... newly discovered material evidence exists that requires the court to vacate the conviction or sentence." UTAH CODE § 78–35a–104(1)(e). To invoke this exception, a petitioner must meet the following four conditions:

(i) neither the petitioner nor petitioner's counsel knew of the evidence at the time of trial or sentencing or in time to include the evidence in any previously filed post-trial motion or post-conviction proceeding, and the evidence could not have been discovered through the exercise of reasonable diligence;

(ii) the material evidence is not merely cumulative of evidence that was known;

(iii) the material evidence is not merely impeachment evidence; and

(iv) viewed with all the other evidence, the newly discovered material evidence demonstrates that no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received.

*Id.* § 78–35a–104(1)(e). We have held that, "under the PCRA, as well as our due process case law, newly discovered evidence merits

post-conviction relief only if the evidence would create a reasonable doubt as to the defendant's guilt." *Medel v. State*, 2008 UT 32, ¶ 51, 184 P.3d 1226.

¶ 15 After analyzing Taylor's twelve claims under the framework of the PCRA, we conclude that all of Taylor's claims are procedurally barred because they either were raised or addressed, or could have been raised, in Taylor's first petition for post-conviction relief and do not meet the newly discovered evidence exception to the procedural bar.[7]

### A. Taylor's Claim That the Trial Court Erred in Dismissing His Motion for a Change of Venue Is Procedurally Barred

¶ 16 Taylor argues that the extensive media coverage before his penalty trial and the small size of the community from which the jury pool was selected ultimately violated his Sixth and Fourteenth Amendment rights to a fair and impartial jury. While the extensive media coverage and size of the jury pool has been evident for over twenty years, Taylor argues that the allegedly erroneous denial of his motion for change of venue could not have been raised in his first petition for post-conviction relief because, at that time, he did not have sufficient evidence to challenge the trial court's denial of that motion. Taylor reasons that to challenge "a change of venue decision ... on appeal following a jury verdict, the determinative question is whether [the] defendant was ultimately tried by a fair and impartial jury." *Lafferty v. State*, 2007 UT 73, ¶ 42, 175 P.3d 530 (second alteration in original) (internal quotation marks omitted). Taylor contends that he first discovered he had been sentenced by a biased jury after the filing of his first petition for post-conviction relief. Spe-

---

**6.** It is unclear exactly what claims Taylor asks us to consider under the newly discovered evidence exception. Taylor's brief states that "[t]here are [only] two instances of newly discovered evidence in the Petition"—claim 14 and 24. But his brief also argues that each of his individual claims should be considered under the newly discovered evidence exception because they "present new facts not previously known which show the denial of a constitutional right." It therefore appears that Taylor relies on his alleged newly discovered evidence to raise all twelve of his claims and overcome the PCRA's procedural bar. Because we have recognized

that the common law exception for newly discovered evidence was codified into the PCRA, *see Gardner v. Galetka (Gardner I)*, 2004 UT 42, ¶¶ 14–15, 94 P.3d 263, we evaluate all of Taylor's claims under the PCRA's provisions pertaining to newly discovered evidence.

**7.** The State also contends that all of Taylor's claims are time barred under the PCRA. *See* Utah Code § 78–35a–107. We do not reach the timeliness arguments because we hold that all of Taylor's claims are procedurally barred.

cifically, he claims that he first became aware that juror B.M. was biased through jury interviews conducted by his federal habeas counsel. Taylor cites to statements from individual jurors that juror B.M. fell asleep one time during the penalty phase and was awakened by a fellow juror and that juror B.M. called for death at the beginning of the jury deliberations. We are unpersuaded that these facts constitute newly discovered evidence for purposes of analyzing the procedural bar.

¶ 17 Even if the complete facts relevant to Taylor's change of venue claim were not discovered until after his first petition, this does not necessarily mean that these facts qualify as newly discovered evidence under the PCRA. To constitute newly discovered evidence, the evidence must, among other requirements, when "viewed with all the other evidence ... demonstrate[ ] that no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received." UTAH CODE § 78–35a–104(1)(e)(iv); see also Medel, 2008 UT 32, ¶ 51, 184 P.3d 1226 (noting that "under the PCRA, as well as our due process case law, newly discovered evidence merits post-conviction relief only if the evidence would create a reasonable doubt as to the defendant's guilt"). But the evidence Taylor presents fails to establish that juror B.M. was biased. It demonstrates only that juror B.M. fell asleep for a brief time and that, after hearing all of the evidence presented at the penalty phase, juror B.M. believed Taylor should be given the death penalty. Because this evidence does not establish bias, it does not undermine our confidence in the jury's verdict and therefore does not establish that "no reasonable trier of fact could have found [Taylor] ... subject to the sentence received." UTAH CODE § 78–35a–104(1)(e)(iv). We are therefore precluded from analyzing Taylor's change of venue claim under the PCRA's newly discovered evidence exception.

B. *Taylor's Claims That the Trial Court Erred by Introducing the Doctrine of Blood Atonement During Voir Dire and in Not Striking Jurors for Cause Are Procedurally Barred*

¶ 18 Taylor argues that the trial court made two errors during the voir dire proceedings that resulted in denial of his Sixth and Fourteenth Amendment rights to be tried by a fair and impartial jury. First, Taylor contends that the trial court asked leading questions regarding the doctrine of blood atonement, resulting in juror B.M.'s not being excused for cause despite his belief in that doctrine. Additionally, Taylor argues that the trial court erred in not striking juror B.M. for cause when juror B.M. expressed a belief in the doctrine of blood atonement. Both claims are procedurally barred.

¶ 19 The facts underlying these claims arose during Taylor's voir dire proceedings and have been available to counsel for over twenty years. Taylor therefore could have raised them on direct appeal or in his first petition for post-conviction relief. Indeed, we addressed a similar issue in *Taylor II*. See 2007 UT 12, ¶¶ 78–80, 85–86, 156 P.3d 739.

¶ 20 In *Taylor II*, we considered whether Taylor's counsel was ineffective for not using a peremptory strike to remove juror B.M. when juror B.M. allegedly represented during voir dire that he believed in the doctrine of blood atonement. *Id.* We were ultimately unpersuaded by Taylor's argument. *Id.* ¶¶ 80, 85–86. We reasoned that, although juror B.M. affirmatively represented that he believed in the doctrine of blood atonement, "upon later questioning it became clear that [juror B.M.] believed the doctrine of blood atonement referred to the Christian belief that Jesus Christ died for the sins of the world and not to the principle that anyone who kills must be killed." *Id.* ¶ 80. We also noted that juror B.M. stated that "there may be circumstances in which a defendant who deliberately killed another person might not deserve the death penalty." *Id.* ¶ 85. We therefore concluded that juror B.M. "did not express[ ] bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove [him]." *Id.* (first alteration in original) (internal quotation marks omitted).

¶ 21 In this petition, Taylor is yet again challenging the voir dire proceedings. But

instead of claiming that his counsel was ineffective for not striking juror B.M. because of his belief in blood atonement, he now argues that the trial court erred in questioning the jurors about the doctrine and for failing to remove juror B.M. for cause due to his alleged belief in the doctrine. We fail to see how this claim is so factually dissimilar from Taylor's ineffective assistant of counsel claim that it could not have been raised in Taylor's first petition.

¶ 22 Taylor maintains that these claims should be considered under the newly discovered evidence exception because they "present new facts obtained via a costly in-depth post-conviction investigation[ ] that were not previously known and which show the denial of a constitutional right." But Taylor does not present any new evidence regarding the manner in which his voir dire proceeding was conducted or any new evidence establishing that juror B.M. actually believed in the doctrine of blood atonement. Because we have already addressed this issue, we are precluded by the PCRA from addressing it again. *See* UTAH CODE § 78–35a–106(1)(b), (d) (noting that "[a] person is not eligible for relief under [the PCRA] upon any ground that . . . was raised or addressed in any previous" trial, appeal, or post-conviction proceeding). We therefore hold that Taylor's challenges to the trial court's introduction of blood atonement during the voir dire proceedings and its failure to strike juror B.M. for cause are procedurally barred.

C. *Taylor's Claim That the Prosecutor Struck Potential Jurors Based on Religious Affiliation Is Procedurally Barred*

■ ¶ 23 Taylor argues that the prosecutor used peremptory challenges to strike potential jurors based on their religious affiliation in violation of his "Fifth, Sixth, Eighth, and Fourteenth Amendment rights to a fair trial, due process, equal protection of laws, a reliable penalty determination, and a jury which represented a fair cross section of the community." He also asserts that the prosecutor violated comparable provisions of the Utah Constitution. Taylor contends these claims are not procedurally barred because he did not discover the factual basis for them

in time to include them in his first petition for post-conviction relief. Specifically, Taylor argues that the claims first became apparent when he obtained the prosecutor's notes some time after the filing of his first petition. He further argues that the notes are the only available evidence that supports these claims. The notes indicate the religious affiliation of each potential juror and also include numbers that Taylor alleges constitute a scoring system favoring members of the LDS Church over jurors with other religious affiliations. Taylor contends these notes conclusively establish that the prosecution used a peremptory challenge on potential juror H.C. based solely on her religious affiliation.

¶ 24 The PCRA allows a court to grant post-conviction relief to "a person who has been convicted and sentenced for a criminal offense . . . [when] the conviction was obtained or the sentence was imposed in violation of the United States Constitution or Utah Constitution." *See* UTAH CODE § 78–35a–104(1)(a). But the PCRA limits the available grounds for relief to claims that could not have been brought during an earlier proceeding. *See id.* § 78–35a–106 (1)(d). Consistent with this limitation, the PCRA recognizes that, if "newly discovered material evidence exists," the claim could not have been brought in an earlier proceeding and therefore is not procedurally barred. *Id.* § 78–35a–104(1)(e). As discussed above, evidence must satisfy the following four criteria to qualify as newly discovered: (i) "neither the petitioner nor petitioner's counsel knew of the evidence," or could have discovered the evidence through "the exercise of reasonable diligence" during any prior proceeding; (ii) the evidence is not "merely cumulative of evidence that was known"; (iii) the evidence is not "merely impeachment evidence"; and (iv) considering new and existing evidence, "no reasonable trier of fact" could have reached the jury's conclusion. *Id.* § 78–35a–104(1)(e)(i)–(iv).

¶ 25 The prosecutor's notes fail to qualify as newly discovered material evidence for several reasons. First, the factual basis for Taylor's claim was discoverable through the exercise of reasonable diligence, and Taylor

could have included the claim in his first petition for post-conviction relief. Additionally, the prosecutor's notes are "merely cumulative of evidence that was known" during prior proceedings. Taylor's prior counsel attended the voir dire proceeding and knew that potential jurors were being questioned about their religious affiliation. This put Taylor on notice that religion might be considered in the jury selection process. Taylor and his counsel also knew which jurors the prosecution removed with peremptory challenges. Further, he should have been aware that LDS members comprised approximately 78 percent of the jury pool. As a result, we conclude that Taylor's claim does not depend upon any newly discovered evidence.

¶ 26 Even if the factual basis for the prosecutor's notes was not reasonably discoverable and not merely cumulative, Taylor's claim fails for another, independent reason. To qualify as newly discovered evidence, the prosecutor's notes must, when considered with existing evidence, demonstrate that no reasonable trier of fact could have reached the jury's conclusion. We recently held that "under the PCRA, as well as our due process case law, newly discovered evidence merits post-conviction relief only if the evidence would create a reasonable doubt as to the defendant's guilt." *Medel*, 2008 UT 32, ¶ 51, 184 P.3d 1226; *see also id.* ¶ 50 ("The cumulative requirement of [the newly discovered evidence exception] is consistent with our case law requiring that the undisclosed evidence cast doubt on the validity of the petitioner's conviction. There is no violation of due process if the evidence demonstrates only a mere possibility that an item of [evidence] might have helped the defense or might have affected the outcome of the trial...." (third alteration in original) (internal quotation marks omitted)). Taylor fails to demonstrate that the prosecutor's notes "demonstrate[] that no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received." UTAH CODE § 78–35a–104(1)(e)(iv).

¶ 27 Taylor also contends, based on the prosecutor's notes, that his constitutional rights were violated when the prosecution allegedly exercised peremptory strikes to re-move non-LDS jurors. Whether it is a violation of our state constitution or the federal constitution to strike jurors on the basis of religion is an issue of first impression. And we do not reach this issue here because Taylor failed to offer newly discovered evidence in support of his constitutional claims.

¶ 28 In sum, the prosecutor's notes fail to satisfy three of the four elements of the PCRA's newly discovered evidence exception. That is, the factual basis for Taylor's claim was discoverable in past proceedings, the evidence is merely cumulative, and the evidence does not create reasonable doubt as to Taylor's guilt. Accordingly, we hold that the prosecutor's notes do not qualify as newly discovered evidence and that Taylor's claim that the prosecution struck potential jurors based on their religious affiliation is procedurally barred.

### D. Taylor's Claim Alleging Juror Misconduct Is Procedurally Barred

¶ 29 Taylor argues that the jury improperly considered two pieces of extrinsic evidence. First, he argues that jury members impermissibly discussed the case with each other at the end of every day. Second, Taylor presents evidence that the jury foreperson, suggested to another juror during deliberations that she put herself in the "shoes" of the victims. Taylor contends that these claims of juror misconduct could not have been raised in his first petition for post-conviction relief because evidence supporting them was not discovered until 2007, through the efforts of his federal habeas counsel. We agree that this evidence was not available at the time of the direct appeal or the filing of Taylor's first petition. But this claim is nevertheless procedurally barred because this evidence does not qualify as newly discovered evidence under the PCRA.

¶ 30 That the evidentiary basis for a claim is not discovered in time to raise it in a prior petition is not in itself sufficient to overcome the PCRA's procedural bar. Rather, to overcome the procedural bar, the newly discovered evidence, "viewed with all the other evidence," must "demonstrate[] that no reasonable trier of fact could have found the pe-

titioner ... subject to the sentence received." UTAH CODE § 78–35a–104(1)(e)(iv); *see also Medel,* 2008 UT 32, ¶ 51, 184 P.3d 1226 (noting that "under the PCRA, as well as our due process case law, newly discovered evidence merits post-conviction relief only if the evidence would create a reasonable doubt as to the defendant's guilt"). The new evidence that Taylor presents does not satisfy this standard.

¶ 31 It is axiomatic "that the jury's verdict [must] be based on evidence received in open court [and] not from outside sources." *Sheppard v. Maxwell,* 384 U.S. 333, 351, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). But Taylor does not present any support for his contention that the jury considered extrinsic evidence. Rather, he presents evidence of intra-jury influences relating to (1) juror discussions prior to deliberation and (2) the mental process of an individual juror during deliberations.

¶ 32 The evidence Taylor presents regarding juror discussion prior to deliberation does not establish that the jury's verdict was prejudiced. "[W]hen there are premature deliberations among jurors with no allegations of external influence on the jury, the proper *process* for jury decision making has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial." *United States v. Resko,* 3 F.3d 684, 690 (3d Cir.1993). Indeed, "[p]reserving the finality of jury verdicts militates strongly in favor of barring post-trial juror assertions of pre-deliberation discussion. The probability of some adverse effect on the verdict is far less than for extraneous influences." *United States v. Williams–Davis,* 90 F.3d 490, 505 (D.C.Cir.1996).

¶ 33 Here, Taylor does not present evidence that the jury discussed anything that was not properly introduced at trial and there is no indication that any of the juror's minds had been made up as a result of these predeliberation meetings. Thus, the evidence that Taylor presents does not undermine our confidence in the jury's verdict.

¶ 34 We next discuss Taylor's claim that the jury foreperson introduced prejudi-cial extrinsic evidence during deliberations when he suggested that another juror consider the perspective of the victims. In *State v. DeMille,* 756 P.2d 81 (Utah 1988), we considered a similar question. In that case, we were asked to determine whether a juror introduced prejudicial extrinsic evidence when she told other jurors during deliberations that she received a divine revelation that the defendant was guilty. *Id.* at 83. We held that a juror's beliefs and mental process did not constitute "outside influence" and it was permissible for a juror to "rely upon prayer, or supposed responses to prayer, during [the] deliberation[ ]" process, as long as the "juror is capable of fairly weighing the evidence and applying the law to the facts." *Id.* at 84. Moreover, we held that even if the juror's religion rendered the juror incapable of weighing the evidence, rule 606(b) of the Utah Rules of Evidence prevented the court from challenging the jury's verdict based on the juror's thought process. *Id.* at 85.

¶ 35 Here, as in *DeMille,* Taylor does not present evidence that the jury foreperson or any other juror was rendered incapable of weighing the evidence and applying law to fact. At most, the evidence Taylor presents shows that, as part of the jury foreperson's mental process, he considered the perspective of the victims and asked other jurors to consider the victims' perspective as well. Moreover, as in *DeMille,* the evidence that Taylor presents relates to the mental processes of the jurors and, therefore, cannot be the subject of inquiry under rule 606(b) of the Utah Rules of Evidence.

¶ 36 In summary, Taylor has not shown that juror misconduct prejudiced his verdict. First, Taylor has failed to demonstrate that, during pre-deliberation discussions, the jury considered extrinsic evidence or made up their minds regarding his guilt. Second, the jury foreperson's suggestion that another juror consider the perspective of the victims did not compromise his own, or any other juror's, capacity to weigh the evidence and apply the law to facts. We therefore hold that Taylor is not entitled to relief because the evidence on which he relies does not "demonstrate[ ] that no reasonable trier of

fact could have found the petitioner guilty of the offense or subject to the sentence received." UTAH CODE § 78–35a–104(1)(e)(iv).

### E. Taylor's Claim That the State Failed to Disclose Exculpatory Evidence Is Procedurally Barred

¶ 37 Taylor argues that the State failed to disclose exculpatory evidence regarding the testimony of Scott Manley. In a declaration obtained in 2007 by Taylor's federal habeas counsel, Manley describes being pressured by parole officers before his testimony to "make the story on [Taylor] bigger" or Manley would go back to jail "on some big heavy time." Taylor argues that this evidence should have been disclosed to his trial counsel and could have been used to impeach Manley as a witness. Additionally, he contends his defense was prejudiced by the withholding of this evidence because Manley's testimony was critical in proving premeditation of Taylor's crimes.

¶ 38 We agree that the evidence supporting this claim was not discovered until after Taylor's first petition for post-conviction relief and therefore could not have been raised in an earlier petition. But we hold that this evidence is not sufficient to overcome the procedural bar because, when "viewed with all the other evidence," it does not "demonstrate[ ] that no reasonable trier of fact could have found [Taylor] ... subject to the sentence received." See UTAH CODE § 78–35a–104(1)(e)(iv); see also Medel, 2008 UT 32, ¶ 51, 184 P.3d 1226 (noting that "under the PCRA, as well as our due process case law, newly discovered evidence merits post-conviction relief only if the evidence would create a reasonable doubt as to the defendant's guilt").

¶ 39 Although we have yet to address the specific exculpatory evidence that Taylor now presents, in Taylor II we addressed the importance of Manley's testimony in establishing premeditation. See 2007 UT 12, ¶¶ 106–11, 156 P.3d 739. In Taylor II, Taylor claimed his appellate counsel was ineffective because he failed to challenge the admissibility of Manley's testimony. Id. ¶ 106. We concluded that "even if Manley's testimony was unreliable, any error the court made in admitting [his testimony] was harmless" because it "was not the only evidence of premeditation in th[e] case." Id. ¶ 111. We therefore held that appellate counsel was not ineffective for failing to appeal the admission of Manley's testimony. Id.

¶ 40 Taylor is once again raising issues surrounding Manley's testimony. But rather than claiming that Manley's testimony was inadmissible, Taylor now argues that he has uncovered critical impeachment evidence that would have undermined Manley's credibility.[8] Because we have already held that Manley's testimony regarding premeditation was cumulative, the 2007 declaration would not qualify as newly discovered evidence that would give rise to an exception to the procedural bar.

### F. Taylor's Claim That His Death Sentence Is Disproportionate to His Culpability Is Procedurally Barred

¶ 41 Although he pled guilty to killing Kay Tiede and Beth Potts, Taylor now alleges that it was actually his coconspirator, Deli, who killed these women. He further contends that because Deli received only a life sentence, his death sentence is disproportionate to his culpability and violates his Eighth Amendment right against cruel and

---

8. Taylor claims that the prosecution violated the rules established in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which require the disclosure of evidence to the defense, by withholding the information discovered in Manley's 2007 declaration. Id. at 87, 83 S.Ct. 1194; see also United States v. Bagley, 473 U.S. 667, 676–77, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (extending the Brady rules to include impeachment evidence withheld by the prosecution). However, the State correctly argues that Taylor has not established prosecutorial misconduct under Brady. Establishing a Brady viola-

tion requires the following three components: "(1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the evidence was 'suppressed by the State, either willfully or inadvertently'; and (3) prejudice ensued." Tillman v. State, 2005 UT 56, ¶ 28, 128 P.3d 1123 (quoting Strickler v. Greene, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). In light of our holding in Taylor II that Manley's testimony was cumulative, Taylor cannot establish prejudice.

unusual punishment. This claim is procedurally barred because it could have been raised on direct appeal or in Taylor's first petition for post-conviction relief.

¶ 42 Deli was sentenced to life nearly two decades ago, prior to Taylor's first petition for post-conviction relief. Taylor, however, claims that he could not have brought this claim earlier because facts supporting his innocence were not discovered until after he filed his first petition for post-conviction relief. Specifically, Taylor contends that newly discovered evidence suggests that the shots that killed Beth and Kay came from Deli's .44 caliber gun and not from Taylor's .38 caliber gun, and therefore Taylor is innocent. But Taylor's argument does not meet the PCRA's requirement that the newly discovered evidence "demonstrate[ ] that no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received." UTAH CODE § 78–35a–104(1)(e)(iv). Indeed, Taylor's argument is frivolous because there is ample evidence in the record to support Taylor's guilt. Taylor admitted to Dr. Moench, a psychiatrist who examined him pursuant to a court order, that he was the shooter and had killed both victims. He also admitted to Dr. Moench that he emptied the .38 caliber gun into the victims and then grabbed the .44 caliber and also emptied that gun into the victims. Additionally, Linae testified that she heard Taylor say that he "had to shoot the bitch in the head twice." The medical examiner testified that the fatal wound to Kay was consistent with a .38 caliber and the other wound that could have been fatal was consistent with a .44 caliber. The medical examiner also testified that Beth had a .44 caliber wound to the head and a .38 caliber wound to the chest, both of which could have been fatal.

¶ 43 Moreover, Taylor pled guilty to the murders of Kay Tiede and Beth Potts. "The general rule applicable in criminal proceedings, and the cases are legion, is that by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects...." *State v. Rhinehart*, 2007 UT 61, ¶ 15, 167 P.3d 1046 (internal quotation marks omitted). A defendant can be spared from the consequences of his plea only if he can demonstrate that the plea was not made knowingly and voluntarily. *See Medel*, 2008 UT 32, ¶ 26, 184 P.3d 1226 ("[H]aving pleaded guilty, a defendant's only avenue for challenging his conviction is to claim that he did not voluntarily or intelligently enter his plea." (internal quotation marks omitted)); *cf. Rhinehart*, 2007 UT 61, ¶ 13, 167 P.3d 1046 ("The ineffectiveness of counsel that contributes to a flawed guilty plea, however, can spare a defendant the consequences of her plea only if the defendant makes out the same case required of every defendant who seeks to withdraw a plea: that the plea was not knowing and voluntary.").

¶ 44 In this case, Taylor has not appealed the district court's dismissal of his claim that his plea was not knowingly and voluntarily entered. Where Taylor has pled guilty, we refuse to assume for the sake of argument that he is innocent. Indeed, we have considered Taylor's plea at length in prior proceedings and have not found any procedural or factual problems with it. *See Taylor I*, 947 P.2d 681, 685–86 (Utah 1998); *see also Taylor II*, 2007 UT 12, ¶¶ 18–22, 156 P.3d 739. Because Taylor was aware of the consequences of his plea, including the fact that he could be sentenced to death, he cannot seek relief from his plea unless he can establish that it was not entered knowingly and voluntarily. Because Taylor has not claimed that his plea was not entered knowingly and voluntarily, and because he was aware of Deli's sentence before he filed his first petition for post-conviction relief, this claim is procedurally barred.

### G. Taylor's Claim Alleging an Inadequate Appellate Record Is Procedurally Barred

¶ 45 Taylor argues that his federal counsel has found a problem with the record of the penalty phase. Taylor states that his counsel has been unable to confirm a fact about juror C.C. that was on the record, specifically that one of her sons was married to a sister of one of the prosecutors. Taylor then concludes that if this information is

missing, the entire record cannot be trusted. Taylor also complains that he does not have Deli's trial transcript and therefore his counsel cannot compare the transcripts to search for discrepancies. We conclude that this claim is procedurally barred because it could have been raised on direct appeal or in Taylor's first petition for post-conviction relief.

¶ 46 The evidence presented by Taylor has been part of the record for the better part of twenty years. Taylor's inability to confirm a minor and immaterial detail from the record and the absence of Deli's trial transcript are not prejudicial to his conviction or sentence. Moreover, Taylor did not have a guilt-phase trial because he pled guilty. Evidence presented at Taylor's penalty phase would be specific to him and therefore different from evidence presented at Deli's trial. *See* Utah Code § 76-3-207(2)(a)(ii). It is obvious that Taylor's prior counsel knew about Deli's trial and actively decided to not rely on that transcript, likely because it would have been damaging to Taylor's case. And this claim does not rely on any new evidence that has not been part of the record from the beginning of Taylor's criminal case. Therefore, this claim is procedurally barred.

¶ 47 Regarding the remainder of Taylor's claims, Taylor has failed to include any argument in his brief for claims three and seven.[9] We therefore will not discuss them and hold that they are procedurally barred because they were not raised in this proceeding. Furthermore, in light of our holding that all of Taylor's claims are procedurally barred, we need not discuss claims eleven and twelve, as they deal with "universal failures" and "cumulative error," respectively.

## II. TAYLOR'S CLAIMS DO NOT MEET ANY COMMON LAW OR STATUTORY EXCEPTIONS TO THE PROCEDURAL BAR

■ ¶ 48 We next address Taylor's argument that his post-conviction claims are not procedurally barred because they fall under the common law "good cause" exceptions and the statutory exception for ineffective assistance of counsel. Specifically, he argues that the common law good cause exceptions are applicable in his case. Additionally, Taylor argues that his prior post-conviction counsel's ineffectiveness excepts his claims from the procedural bar. Because Taylor has failed to establish that his former counsel did not withhold these claims for tactical reasons, the common law good cause exceptions do not apply. And our analysis of Taylor's claims under the PCRA and common law exceptions renders further discussion of his claims under the framework of ineffective assistance of counsel unnecessary.

### A. Taylor's Claims Do Not Fall Under the Common Law Good Cause Exceptions

¶ 49 In *Hurst v. Cook*, we identified five good cause exceptions to the procedural bar:

(1) the denial of a constitutional right pursuant to new law that is, or might be, retroactive, (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial, (3) the existence of fundamental unfairness in a conviction, (4) the illegality of a sentence, or (5) a claim overlooked in good faith with no intent to delay or abuse the writ.[10]

777 P.2d 1029, 1037 (Utah 1989) (footnote omitted) (citations omitted). Taylor argues that exceptions two through five apply to all of his claims. Specifically, he contends that the second good cause exception applies because many of his claims rely on "new facts not previously known which ... show the denial of a constitutional right." He further contends that the third and fourth good cause exceptions apply because he is factually innocent. Finally, he contends that the

---

9. Taylor alleges in claim three that the trial court erred in failing to ask certain voir dire questions and in claim seven he alleges that inadmissible evidence was included during the penalty phase.

10. In *Gardner I*, we stated that the PCRA had effectively codified the majority of these exceptions, but we emphasized that "all five common law exceptions retain their independent constitutional significance and may be examined by this court in our review of post-conviction petitions." 2004 UT 42, ¶ 15, 94 P.3d 263. We consider these exceptions in this case because Taylor filed his petition prior to the 2008 amendment to the PCRA.

fifth exception applies because the claims that he raises were "overlooked in good faith." We conclude that none of Taylor's claims meet the good cause exceptions.

■ ¶ 50 For a court to examine a claim under the good cause exceptions, a petitioner has the burden of proving that a claim is not frivolous and was not withheld for tactical reasons. *Id.; see Gerrish₁ v. Barnes,* 844 P.2d 315, 320 (Utah 1992) (recognizing that a petitioner bears the burden of proving that his claims were not withheld for tactical reasons). We agree with the district court that Taylor has failed to show that his claims were not withheld for tactical reasons and "it is unlikely that he could do so." [11]

¶ 51 Taylor does not present any facts or evidence suggesting that prior counsel did not withhold the present claims for tactical purposes. Instead, Taylor uses conclusory reasoning, simply stating that there is "no conceivable basis" to withhold a claim that could grant relief from a murder conviction and death sentence. Taylor's demand for an evidentiary hearing regarding whether prior counsel withheld claims for tactical purposes, without bringing forward any evidence, is without merit and would further complicate this already lengthy and exhaustive litigation. This court, as did the district court, can imagine numerous reasons why these claims were not raised in Taylor's prior post-conviction proceeding, first of which would be that they could easily be viewed as weaker than other claims raised by prior counsel.

¶ 52 Indeed, several of the claims that Taylor now raises are merely variations on claims that were already raised in his first petition for post-conviction relief. For instance, Taylor's claims regarding the doctrine of blood atonement and the failure to dismiss juror B.M. for cause were similar to issues that we addressed in *Taylor II.* Likewise, Taylor's claim that the prosecutor failed to disclose exculpatory evidence impeaching Manley's testimony is also an issue that was essentially raised in *Taylor II.* And as discussed in Part I, the remaining claims that Taylor raises do not undermine our confidence in the jury's verdict and, therefore, it is conceivable that Taylor's former counsel did not investigate or raise these issues because these claims would not have entitled Taylor to relief.

### B. Taylor's Claims Do Not Meet the Exception for Ineffective Assistance of Counsel

¶ 53 Taylor argues that we should consider the merits of his claims because his counsel was ineffective for failing to raise them. Specifically, he contends that because his former counsel was not provided adequate post-conviction funding, he could not effectively research and investigate the claims that he now raises. The PCRA recognizes that a claim of ineffective assistance of counsel is, under some circumstances, an exception to the PCRA's procedural bars. *See* UTAH CODE § 78-35a-104(1)(d).

■ ¶ 54 But analysis of Taylor's claims under both the PCRA's procedural exceptions and the common law exceptions renders further analysis of his claims under the guise of ineffective assistance of counsel unnecessary. The standard for establishing ineffective assistance requires the petitioner to show that prior counsel's representation was so objectively deficient that the defendant's case was prejudiced. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 690–91, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The proper measure for determining whether an attorney's representation was deficient is "simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Taylor I,* 947 P.2d 681, 685 (Utah 1997) (internal quotation marks omitted). Based on our analysis of each of Taylor's claims, we cannot say that Taylor's former counsel was ineffective for having failed to raise them. We therefore find it unnecessary to readdress each of Tay-

---

11. Taylor argues that the district court should have held an evidentiary hearing for additional fact development to determine if his prior post-conviction counsel withheld the present claims for tactical reasons. But it is Taylor who "has the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle [him] to relief." UTAH CODE § 78-35a-105. Taylor has not come forward with any such evidence.

lor's claims under the framework of ineffective assistance of counsel.[12]

## CONCLUSION

¶ 55 We conclude that Taylor's claims are procedurally barred under the PCRA and that Taylor does not qualify for exceptions to the procedural bar. We therefore affirm the district court's decision dismissing Taylor's petition for post-conviction relief.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice LEE, and Court of Appeals Judge JAMES Z. DAVIS joined.

Having recused himself, Justice NEHRING did not participate herein; Court of Appeals Judge JAMES Z. DAVIS sat.

**12.** Taylor also contends that his assertion of factual innocence is good cause for us to examine his claims. Because Taylor failed to appeal the district court's dismissal of his factual innocence claim and because none of Taylor's other claims undermine our confidence in the jury's verdict, we decline to address this issue.