Associate Chief Justice LEE,
concurring in part and concurring in the judgment:
1 31 I concur in the judgment and in Part I of the opinion of Justice Parrish But I disagree. with the balance of that opinion. The issues it addresses in Part II are not properly before us, and that portion of the opinion is thus improperly advisory. Accordingly, I would affirm on the ground that the Post-Conviection Remedies Act (PCRA) affords no right to relief to Meza because he is not challenging a "conviction and sentence" in this case, supra 111, without addressing Meza's entitlement to relief on a petition for an extraordinary writ, supra 1 19 & n. 6, or a motion under Utah Rule of Civil Procedure 60(b)(6), supra 1 23.
I 32 In reaching out to address the merits of a petition and motion that were not filed by Meza or addressed in the briefing on appeal, Justice Parrish proposes to resolve other issues of substantial significance. She would hold, specifically, that (a) "the PCRA's 'sole remedy' provision," Utah Code section T8B-9-102(1), is somehow "inapplicable to him and does not foreclose us from addressing other remedies beyond those provided in the PCRA," supra 119 n. 7; (b) the constitution requires that a "remedy must exist" to give Meza "a mechanism to challenge his alleged constitutional violation" of his right to counsel, supra 121; and (c) our cases free a petitioner seeking an extraordinary writ of a burden of proof of any of the elements set forth in traditional common-law writs, substituting instead an undefined principle of "flexibility," supra I 20 n. 8.
183 The lead opinion's analysis of these significant issues strikes me as questionable. Because none of the issues was properly preserved or briefed in this case, moreover, they should not be resolved in this case.
§ 34 The petition dismissed by the district court and presented to us on appeal was a PCRA petition, plain and simple. Meza never filed a petition for an extraordinary writ-not in the district court, and not in our court. The district court, moréover, issued a decision dismissing a PCRA claim. It never ruled on a petition for an extraordinary writ because it was never asked to do so. The issue was accordingly not preserved in the district court.[1]
*600 135 The same goes for the arguments on appeal. In their briefs the parties have argued over the extent of the courts' jurisdiction to entertain Meza's petition wunder the PCRA. That question has encompassed two subsidiary issues-the proper construction of Utah Code section 78B-9-104(1) (which authorizes the filing of a petition by a "person who has been convicted and sentenced for a criminal offense"), and whether the courts "retain inherent constitutional authority to create common law exceptions" to the limiting terms of the PCRA. |
1836 Meza's briefs nowhere seek to invoke the power of this court to issue an extraordinary writ At most, he has asked us to "exercise [our] constitutional authority to entertain [his] PCRA petition." - (Emphasis added).[2] That became even clearer at oral argument. In response to quesmons from the bench; Meza's counsel conceded that he "had not filed a petition for an extraordinary writ and had nowhere set forth the legal or factual basis for issuance of such a writ. As if to underscore the point, counsel explained his reasons for stopping short of filing such a petition-"We didn't do it in this case because the State has consistently said, 'sorry, it doesn't work, you have to do PCRA'" And the State, in response, noted that it was not "prepared to respond to the extraordinary writ argument, because Mr. Meza did not brief a petition for an extraordinary writ, and he did not ask for that form of relief."[3]
137 The availability of an extraordinary writ is thus a matter not properly presented for our decision. Instead, we are asked to decide only whether Meza's claim is proper under the terms of the PCRA, and whether we retain the power to establish an exception to the terms of that statute.[4] On the first issue, I would follow Justice Parrish's analysis. I would: conclude that the PCRA means what it says, and that Meza's PCRA claim failed as a matter of law because he is not a "person who has been convicted and sentenced for a criminal offense." See supra T1 14-18. On the second issue, I would reject Meza's argument as foreclosed by the plain language of the PCRA and by our precedents.
T38 By statute, a PCRA claim is "the sole remedy for any person who challenges a conviction or sentence for a eriminal offense." Uras Cop® § 78B-9-102(1) (emphasis added). And such remedy "replaces all prior remedies for review, including extraordinary or common law writs." Id. In light of these clear, straightforward limitations, our cases have repudiated the notion of a judicial pre *601 rogative to create "common law exceptions" to the PCRA. We embraced that prerogative for a time.[5] But we have subsequently held that any such authority was overridden by the above-quoted provisions, which were added to the PCRA by amendment in 2008. See Taylor v. State, 2012 UT 5, ¶ 11 n. 3, 270 P.3d 471; Carter v. State, 2012 UT 69, ¶ 23, 289 P.3d 542; Peterson v. Kennard, 2008 UT 90, ¶ 16 n. 8, 201 P.3d 956. At least since our decision in Taylor, there can be no question that we lack the authority to make "common law exceptions" to the PCRA.
139 That is all that we need to say to affirm the decision of the district court in this cage. Because Meza has not filed a petition for extraordinary relief, and the parties have not briefed the propriety of such a petition on appeal, we should not opine on the merits of such a petition. For that reason T cannot join Part II of the lead opinion, which goes to some lengths to opine on the merits of a petition that Meza did not file, see supra 1 21, to conclude that such a petition should fail due to the availability of a. motion under Utah Rule of Civil Procedure 60(b)(6); see supra 1T 28-26, and, in the process, to opine on significant questions of constitutional law (as to a supposed requirement that a "remedy must exist" for any "alleged constitutional violation," supra I 21).
4] 40 The lack of adversarial brleﬁng on the issues explored in part II of the lead opinion is troubling. We have no briefing, for example, on the question of whether a "plain, speedyl,] and adequate remedy is available" to Meza through a mechanism other than a petition for extraordinary relief. R. Crv. P. 65B, Nor do we have any briefing on the question of which if any of the common law writs might best fit Meza's case, or whether we may have the authority to extend an established writ to fit the facts and circumstances of this case. See supra T 20 n. 9 (rejecting the argument that "Meza is not entitled to extraordinary relief unless he can identify the ancient writ that provided the specific relief he seeks"). And because no one has briefed these questions, we likewise lack any briefing on the availability of the. alternative remedy proposed by Justice Parrish-of a motion to set aside a judgment under Utah Rule of Civil Procedure 60(b)(6).
€ 41 The notion of a constitutional requirement that a "remedy must exist" for any "alleged constitutional violation," supra " 21, is another matter that was not briefed by the parties. And this is a substantial leap,. Justice Parrish's only authority for it is State v. Rees, 2005 UT 69, 1 14, 125 P.8d 874, but the quoted language from Rees is by no means a holding that the constitution guarantees a judicial remedy for any violation of its terms. Rees simply speaks of "questions of what tool should be deployed to protect" a right for which "no remedy exists in' statute or rule." Id. (emphasis added). And the answer that the Rees opinion provides is not that a "remedy must exist" as a constitutional requirement, but simply that "extraordinary writs embody the procedure traditionally used to protect such a right." Id. That is uncontroversial. But it does not at all support the notion that for every constitutional right there must be a judicial remedy. American law, in fact, has long repudiated that principle. [6] I cannot concur in an opinion that sets *602 aside longstanding precedent on an important question of constitutional law-least of all in a case in which the question is not properly presented.
142 Our law has long recognized the authority of the legislature to regulate the availability: of <and limitations on private claims asserting violations of the constitution. Doctrines of justiciability, political question, procedural bar, and statutes of limitations have long limited the availability of judicial review of constitutional claims. See supra {11 n. 6. Without careful briefing on the matter, we cannot lightly assume that the legislature exceeded its authority in limiting review under the PCRA to challenges to a "conviction or sentence for a criminal offense." Urax Cop® $ 78B-9-102(1). >
€43 Nor can we avoid the question by asserting that this provision is somehow "inapplicable and does not foreclose us from addressing other remedies outside the PCRA." Supra 119 a. 7. The whole point of the sole remedy provision is to prescribe a sole remedy-to "replace[ ] all prior remedies for review, including extraordinary or common law writs." Urax CopE § 78B-9-102(1). Thus, the fact that "Mr. Meza does not challenge a conviction or a sentence," supra I 19 n. 6, does not make the provision "inapplicable." It forecloses his right to assert a claim. That was the holding of the district court- and of part I of the lead opinion. We should leave it at that. We should hold that Meza lacks a right to sue under the PCRA, and leave for any future case the questions whether he may seek an extraordinary writ or file a 60(b) motion (and if he so claims, whether he has a constitutional right to any such remedy).
{44 Our rules of preservation are longstanding and well-settled,[7] And there are significant barriers to our resolution of issues that are neither presented by a live controversy nor briefed by the parties on appeal-barriers ranging from the constitutional (of issuing advisory opinions) [8] to the pragmatic (of deciding questions without the benefit of adversary briefing).[9]
1 45 I can appreciate a sense of sympathy for the plight of Mr. Meza. And I understand *603 the impulse to preserve an avenue for relief on his claim of ineffective assistance of counsel. But our role in this matter is limited. As judges our job is to decide the issues before us under the law as it stands. I would do so without reaching out to resolve questions not properly presented.[10]

. None of the district court filings in the record make any reference to Utah Rule of Civil Procedure 65B-our rule governing extraordinary relief. And none of Meza's filings includes a docu *600 ment that asks-in form or substance-for the issuance of an extraordinary writ. Justice Parrish does not contend otherwise. Although she purports to see in Meza's appellate briefing an implicit invocation of this court's power to issue an extraordinary writ, supra 121, Justice Parrish nowhere claims that Meza preserved the issue by asking the district court to rule on a petition for extraordinary writ.

. Justice Parrish claims to "understand Mr. . Meza's argument" d1fferently Supra T21. She says that the "entire crux" of Meza's argument was his invocation of our " 'inherent constitutional authority to create common law exceptions to the PCRA.' " Supra 121. But the quoted sentence is an outlier in the briefing. And, more ~ importantly, even the quoted language' is not an assertion of a right to an extraordinary writ; it is simply a request that we exercise our supposed " 'constitutional authority to create common law . exceptions to the PCRA.'" We have no such power, see infra 119-20, and even the lead opmlon declines to assert it.
The problem is evident in the lack of briefing on the issues the lead opinion addresses. Nowhere in the parties' briefs on appeal do we see any argument at all on the elements of any extraordinary writ that might be available to Meza, on the existence of an alternative remedy {like a 60(b) motion), or on the supposed constitutional right to a remedy (rendering the PCRA's sole remedy provision unconstitutional). These are all issues that Justice: Parrish reaches out to decide. This is not a matter of '"interpret[ing] Mr. Meza's argument[s]" on appeal. Supra 122. It is a matter of providing a roadmap for his success on remand. That is not our role.

. During oral argument, members of the court appeared to appreciate the problem-by noting that an opinion on the availability of a writ that Meza had not sought would constitute an "advisory opinion."

. Justice Parrish's attempts to justify her approach to resolving this case fall short. It cannot be said that we are simply "invok{ing] our extraordinary writ authority to fashion a remedy in the wake of an unremedied constitutional deficiency." Supra 122. Meza has neither briefed nor established any "constitutional deficiency," and the State has had no chance to respond to any such argument.

. See, e.g., Tillman v. State, 2005 UT 56, ¶¶ 21-23, 128 P.3d 1123 (applying Hurst exceptions to the PCRA); Gardner v. Galetka, 2004 UT 42, ¶ 17, 94 P.3d 263 (same); Hurst v. Cook, 777 P.2d 1029, 1037 (Utah 1989) (establishing common law exceptions to post-conviction procedural bar).

. While Marbury v. Madison famously opined that for every right there is a remedy, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803), that has not been reality. Exceptions to this ideal are legion. See Richard H. Fallon, Jr. & Daniel J. Meltzer, New Law, Nomw-Retroactivity, and Constitutional Remedies, 104 Harv. L. Rev. 1731, 1784 (1991) ("Modern doctrines, beyond any peradventure, depart decisively from the notion that the Constitution requires effective remedies for all victims of constitutional violations"). In fact, in Mar bury itself the court declined to fashion a remedy despite its conclusion that Marbury had a statutory right that had been violated. See 5 U.S. at 154, 180. And the doctrines limiting or altogether withholding a remedy when there has been a constitutional violation are extensive: sovereign immunity, see United States v. Testan, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); absolute immunity, see, e.g., Tenney v. Brandhove, 341 U.S. 367, 376, 379, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); qualified immunity, see Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 1982); exceptions to the Fourth Amendment's exclusionary rule, see, e.g.,. Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 *602 L.Ed.2d 285 (2011); the collateral review exception to the Fourth Amendment, see Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) the harmless error doctrine, see, e.g., Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); and the non-retroactivity principle of new law, see Teague v. Lane, 489 U.S. 288, 109 S.Ct 1060, 103 L.Ed.2d 334 (1989). See also; John M. Greabe, Constitutional Remedies and Public Interest Balancing, 21 Wm. & Mary Bur Rys. J. 857, 881-88 (2013); John C. Jeffries, Jr., The Right-Remedy Gap in Constitutional Law, 109 Yarr L.J. 87, 87-95 (1999). Other limitations on the availability of a remedy for a constitutional violation include the redressability prong of injury-in-fact analysis for standing, see, e.g., Linda R.S. v. Richard D., 410 U.S, 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); the political question doctrine, see Luther v. Borden, 48 U.S. (7 How.) 1, 12 L.Ed. 581 (1849); and statutes of limitations.

. Hill v. Superior Prop. Mgmt. Servs., Inc., 2013 UT 60, ¶ 46, 321 P.3d 1054 (explaining how "[olur adversary system demands" adherence to preservation doctrine); Patterson v. Patterson, 2011 UT 68, ¶ 15, 266 P.3d 828 (explaining how preservation doctrine furthers "judicial economy" and "fairness" by ensuring that both the lower court and the opposing party have an opportunity to address all the issues); 438 Main St. v. Easy Heat, Inc., 2004 UT 72, ¶ 51, 99 P.3d 801 ("[Preservation] puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding.".

. Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union, 2012 UT 75, ¶ 23, 289 P.3d 582 ("[Wlhatever else the judicial power clause may imply, it incorporates a prohibition on the issuance of advisory opinions by our courts."); see also Gregory v. Shurtleff, 2013 UT 18, ¶ 73, 299 P.3d 1098 (Lee, J., concurring in part and dissenting in part) ("[Blecause the power we wield must be Judicial, we are foreclosed from making law or announcing our views in an advisory or other non-judicial posture.").

. City & Cnty. of San Francisco v. Sheehan, - U.S. -, -, 135 S.Ct. 1765, 1773-74, 191 L.Ed.2d 856 (2015) (declining to address an "important question" of whether particular statutory language was applicable because resolution would "benefit from briefing and an adversary presentation"); United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961) (recognizing that advisory opinions are prohibited, in part, because the issues "are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests").

. In light of my criticism of the lead opinion's decision to reach out to resolve issues not properly presented, I am in no position to offer my own conclusive views. But I am dubious of at least one additional aspect of Justice Parrish's opinion-its rejection of the State's argument that "Meza is not entitled to extraordinary relief unless he can identify the ancient writ that provided the specific relief he seeks." Supra 120 n. 8. I would be reluctant to read our cases to have replaced the elements of common law writs with a general principle of practical "flexibility." Supra 120 n. 8. Indeed, our decision in State v. Barrett, which is cited by Justice Parrish, at least arguably reinforces the viability of the elements of historical writs. 2005 UT 88, ¶ 11, 127 P.3d 682 (explaining that "the practice of specifically listing each available common law writ has been abandoned," but emphasizing that our rule 65B "can be thought of as a repository of all the extraordinary writs that, in the past, were envisioned as separate and distinct proceedings," and holding that "[the fact that rule 65B has subsumed the common law writs does not ... change the reality that 'a court must look to the nature of the relief sought, the circumstances alleged in the petition, and the purpose of the type of writ sought in deciding whether to grant extraordinary relief " (quoting Renn v. Utah State Bd. of Pardons, 904 P.2d 677, 683 (Utah 1995))). In any event, we should not decide this important issue in the absence of a "clash of adversary argument" to assist us in "exploring every aspect of a multifaceted situation." Fruehauf, 365 U.S. at 157, 81 S.Ct. 547.